UNION INS. CO. OF PHILADELPHIA *et. al.* v. CENTRAL TRUST CO. OF NEW YORK *et al.*

(*Supreme Court, General Term, First Department.*   December 29, 1890.)

1. ARBITRATION—SECURITY FOR AWARD—REVOCATION OF SUBMISSION—PARTIES TO ACTION.

As required by a submission to arbitration of controversies between two corporations and a third and D., a deposit was made by such third corporation with a trust company as security for any award to be made in favor of said two corporations. D. revoked the submission before any award was made, whereupon the two corporations sued the trust company and the third corporation to have their costs and expenses incurred and damages paid out of the deposit.   *Held*, that they had a joint interest in the security; and, under Code Civil Proc. N. Y. §§ 446, 448, providing that all persons having an interest in the subject of the action and in obtaining the judgment demanded may be joined as plaintiffs, and that parties united in interest must be joined as plaintiffs or defendants, there was no misjoinder of parties plaintiff or of causes of action.

**2. Same—Action for Revoking Submission—Costs.**
    By the terms of the submission, such deposit was made as security for any award to be made "in said arbitration," and was payable by the trust company "in accordance with any judgment that may be entered upon such award." *Held*, that this agreement was within Code Civil Proc. N. Y. § 2384, providing that where a party revokes a submission, any other party thereto "may maintain an action against him, and also against his sureties, if any, upon the submission or any instrument collateral thereto," for the costs and expenses and damages incurred in preparing for the arbitration and in conducting the proceedings to the time of the revocation.

Appeal from special term, New York county.

Action by the Union Insurance Company of Philadelphia and the Insurance Company of the State of Pennsylvania against the Central Trust Company of New York and the Continental Insurance Company of New York. Defendants appeal from an interlocutory judgment overruling their demurrers to the complaint. On the hearing of the demurrers, the following opinion was rendered at special term by VAN BRUNT, J.:

"This action was brought to determine the rights and interests of the parties in respect to a certain fund deposited with the defendant the Central Trust Company of the city of New York under and pursuant to a certain arbitration agreement, and to enjoin the disposition of said fund pending the action. The complaint alleges that on or about the 14th of October, 1885, the plaintiffs entered into a certain submission to arbitration with the defendant the Continental Insurance Co. of the city of New York and one Lorenzo Dimick. This agreement of arbitration, after reciting that controversies were existing and pending between the parties of the first and second parts (viz., the plaintiffs) and the parties of the third and fourth parts, (viz., the Continental Insurance Co. and said Dimick,) arising chiefly out of the transactions and dealings of said Dimick, and that certain civil actions and suits were pending between the said companies and the said Dimick, appointed as arbitrators one Reed, of Philadelphia, and one Carpenter, of New York, with a third arbitrator to be selected, to adjust the differences mentioned in said agreement of arbitration. It was further provided that the arbitrators should select the third arbitrator on the execution and delivery of the agreement of arbitration. The subjects upon which the arbitrators were to act were thereupon stated in the agreement, and a provision made that judgment might be rendered upon the award in the supreme court of the state of New York. It was further provided that neither of the parties should have the right to revoke the submission. The compensation of the arbitrators and expenses of witnesses were also provided for. The agreement also contained the following clause: 'It is further agreed that at or before the execution and delivery of this agreement there shall be deposited with the Central Trust Co. of the city of New York, security satisfactory to the parties of the first and second parts to the amount of $50,000, to secure the payment, performance, and satisfaction of any award in favor of the said parties of the first and second parts, or either of them, that may be made against said Dimick in said arbitration by said arbitrators or a majority of them, payment and satisfaction of said award up to the said amount of $50,000 to be paid upon demand by the Central Trust Co. of New York in accordance with any judgment that may be entered upon such award.' The complaint further alleged that the arbitrators named in the agreement selected as the third arbitrator Stephen P. Nash, of New York; that Dimick died in February, 1888, leaving a last will and testament devising all his property to his wife, Kate E. Dimick, who was duly appointed the executrix thereof; that on or about the 13th of October, and before the execution and delivery of said submission, the defendant the Continental Insurance Co., with the approval and procurement of said Dimick, and in conformity to the terms of the submission, deposited with the defendant the Central Trust Company 500 shares of the capital stock of the New York and Harlem Ry. Co., to be held by said company in accordance

with the terms of said submission.   The said trust company signed and indorsed upon said agreement the following receipt:

"'NEW YORK, October 13th, 1885.

"'Received 500 shares of the capital stock of the New York and Harlem Railroad Company, to be held in accordance with the terms of the above submission.                     CENTRAL TRUST CO. OF NEW YORK,

"'G. SHERMAN, Vice-Pres.'

"The complaint further alleges that thereafter, and from the 15th until about the 18th of October, the plaintiffs and the said Continental Ins. C o. and Dimick proceeded under said submission before the arbitrators, and that the plaintiffs have always, as parties to said submission, duly kept and performed and in all respects complied with all the provisions and covenants of every nature on their part to be kept and performed contained in the said submission; that on the 18th of October Dimick served upon arbitrators a revocation of said submission to arbitration; that the plaintiffs have incurred costs and expenses in preparing for said arbitration and the conducting of the proceedings therein at the time of such revocation in excess of the sum of $50,000; that in December, 1889, the plaintiff duly demanded from the Continental Insurance Company, the Central Trust Co., and the said Kate E. Dimick, executrix, etc., payment of said sum of $50,000 out of the security as so deposited as aforesaid, which security then and at all times therein mentioned was of far greater value than $50,000, which payment was refused.   The complaint contains the further allegation that the defendants the Continental Ins. Co. and Dimick claimed an interest in said stock and its proceeds adverse to the plaintiffs, and relief was thereupon asked praying that the defendants, and each of them, might be enjoined until the trial and decision of the action from selling or disposing of this security, and that it might be adjudged and decreed that the said stock may be sold, and the rights and interests of the parties therein be settled, and the plaintiffs be paid out of the proceeds the amount of their costs and expenses incurred and damages suffered as aforesaid, and for such other relief as might be just.   To this complaint the defendants the Continental Insurance Co. and the Central Trust Co. separately demurred upon the grounds: *First,* that there is a misjoinder of parties plaintiff, in that an alleged cause of action in favor of the Union Ins. Co. has been joined in the same action with a distinct alleged cause of action in favor of the plaintiff the Insurance Company of the State of Pennsylvania; *second,* that causes of action have been improperly united, in that the alleged cause of action in favor of the Union Ins. Co. has been united in the same complaint and action with a distinct alleged cause of action in favor of the plaintiff the Insurance Company of the State of Pennsylvania; *third,* that the complaint does not state facts sufficient to constitute a cause of action; *fourth,* that the complaint does not state facts sufficient to constitute a cause of action against the demurring defendant.

"In the disposition of these demurrers we will consider first the ground of demurrer that there is a misjoinder of parties plaintiff.   It seems apparent that this objection is not well taken.   The provisions of section 446 of the Code are that all persons having an interest in the subject of the action and in obtaining the judgment demanded may be joined as plaintiffs, except as otherwise expressly prescribed in the act.   Section 448 provides as follows: 'Of the parties to the action those who are united in interest must be joined as plaintiffs or defendants, except as otherwise expressly prescribed in this act.   But if the consent of any one who ought to be joined as plaintiff cannot be obtained he may be made a defendant, the reason therefor being stated in the complaint.   It seems to be clear that, if there is any right to be enforced in respect to these funds in favor of either the parties of the first or second parts, both are interested therein, and both are necessary parties to the action, and both may claim affirmative judgment.   The subject-matter of

the action is the $50,000, and this deposit was made for the purpose of securing payment, performance, and satisfaction of any award in favor of the parties of the first and second parts, or either of them. Whatever interest they had in this security was joint, until by the decision of the arbitrators it appeared that either one or both of them had no interest therein. It would appear, therefore, that, this deposit having been made as security to these plaintiffs, if there were any rights to be enforced against this fund for the purpose of meeting their expenses and the expenses of the arbitrators incurred prior to the revocation, this interest is necessarily joint. We think, therefore, that it is clear that there was no misjoinder of parties plaintiff. The views expressed in regard to the first ground of demurrer seem to dispose of the second ground, because there is no separate cause of action alleged in favor of these two plaintiffs. Their cause of action is joint, because they are jointly interested in the fund; and one of these parties would have no right to exhaust the fund for the payment of its expenses, leaving the other without any recourse against a security which had been given to it in the same manner. It was absolutely necessary that the rights of these parties should be adjudicated in one action, and that the proportion which each was entitled to recover out of the fund should be settled in the one action, for the reason that the deposit was a joint security, and, furthermore, because it was under a single agreement.

"This brings us to the next two grounds of demurrer, that the complaint does not state facts sufficient to constitute a cause of action, either generally or against the particular demurring defendant. In view of the decision which has been upon the revocation of the arbitration by Dimick notwithstanding the agreement not to revoke, this question must be determined upon the basis that the agreement to arbitrate was lawfully revoked. Considerable discussion has been entered into by the counsel on either side as to what were the rights and liabilities under such circumstances both under the Revised Statutes and under the Code. We will only refer to the provisions of the Code which seem to entirely dispose of the question at issue. Section 2384 is as follows: 'Liability of Party who Revokes. Sec. 2384. Where a party revokes a submission made either as prescribed in this title or otherwise, any other party to the submission may maintain an action against him, and also against his sureties, if any, upon the submission, or any instrument collateral thereto, in which action the plaintiff may recover all the costs and other expenses and all the damages which he has incurred in preparing for the arbitration and in conducting the proceedings to the time of the revocation. Either of the arbitrators may recover in an action against the revoking party his reasonable costs and expenses.' Therefore, by this provision, any of the other parties to this submission in consequence of the revocation by Dimick, had the right to maintain an action against him, and also against his sureties, if any, upon the submission or any instrument collateral thereto, to recover their costs and expenses. It is alleged upon the part of the Continental Ins. Co. that they were not the sureties of Dimick, and therefore the action could not be maintained against them; and that the cause of action against both defendants fails because by the special covenant in the submission the Continental Ins. Co., by agreement with Dimick, had paid the fund in question, not to secure the submission, but to provide for the payment, performance, and satisfaction by Dimick of any award against him; and that the fund should be available to the plaintiffs only in payment of any judgment that might be entered thereon in their favor. We think that the provisions of the section referred to expressly gives a right of action under the circumstances presented in this case. It is true that neither the Continental Ins. Co. nor the Central Trust Co. were sureties for Dimick upon this arbitration. It is also true that by the provisions of the arbitration agreement it was provided that this $50,-000 should be deposited to secure the payment, performance and satisfaction

of any award in favor of the plaintiffs, or either of them, that might be made against Dimick in the arbitration, and that payment and satisfaction of this award up to the amount of $50,000 should be made upon demand by the Central Trust Company in accordance with any judgment that might be entered upon such award. If the question of the right to maintain this action depended upon the strict words which have been quoted, undoubtedly no claim against this fund would have arisen by a revocation of the submission to arbitration. But the liabilities of parties to such an arbitration, or their sureties, or arising under instruments collateral to the agreement to arbitrate in case of a revocation, is determined by the statute, which provides that in case of a revocation the other party may recover his expenses, etc., against the revoking party or his sureties, or upon any instrument collateral to the agreement to arbitrate. Now, it seems to be plain that the agreement respecting this deposit, although incorporated in the agreement to arbitrate, was really an instrument collateral to such agreement; and it was by reason of the provisions of this collateral agreement that the fund in question sprang into existence. The mere fact that it was incorporated in the same instrument as the agreement to arbitrate makes this deposit and the agreement under which it was deposited no less collateral to the agreement to arbitrate. It is an agreement made for the benefit of the plaintiffs, and to secure them. The fund is brought into existence in pursuance of that agreement being furnished by the Continental Ins. Co. according to an agreement with Dimick. It is therefore the product of an instrument collateral to the agreement to arbitrate. Suppose there had been an undertaking upon the part of the Continental Ins. Co., on behalf of Dimick, to deposit this money, upon a separate paper, and conditioned precisely the same as the agreement now under consideration, could there be any doubt but that it would be an instrument collateral to the agreement to submit, within the language of the Code? It seems to me, clearly not; and that all the confusion in regard to this question has arisen from the fact that the collateral instrument is incorporated in the agreement to submit. But, as we have already seen, that fact in no way changes the relations of the parties. It is an undertaking independent of the agreement to arbitrate to secure the award, and such an instrument comes clearly within the definitions of the Code as collateral to the submission. Now, this $50,000, which is in the hands of the Central Trust Co., is the product of this agreement. It was deposited to secure this award, and the rights of the parties are to be determined by the collateral instrument out of which the deposit sprung, interpreted by the liabilities provided for by the section of the Code already cited. Although the collateral agreement to secure the performance of the award by Dimick contained no express provision such as would entail the obligation to pay the expenses of the award, the law has stated that, where any such obligation is entered into, the obligor, in case of a revocation of the submission, becomes liable to pay the expenses of the party who is not at fault, and the contract between the parties is to be construed in view of the provisions of the statutes governing such instruments. It seems to me, therefore, that this action is upon an instrument collateral to the submission and the fund brought into existence thereby, which fund was to be the surety for the performance by Dimick of any award which might be rendered against him. The demurrer should be overruled, with leave to withdraw the demurrer and answer on payment of costs."

Argued before BRADY and DANIELS, JJ.

*Butler, Stillman & Hubbard,* (*John Notman* and *William Allen Butler,* of counsel,) for appellants. *Evarts, Choate & Beaman,* (*Joseph H. Choate* and *Treadwell Cleveland,* of counsel,) for respondents.

BRADY, J. In this case the elaborate opinion of the presiding justice, delivered upon the decision of this controversy before him, covers all the points

presented, and needs no elaboration.    The serious questions, at first blush, relate to that part of the agreement providing for the deposit of $50,000 as security for the performance of any award made against Dimick, and the construction to be given to section 2384 of the Code, in connection with it.    It is true that the clause mentioned provides in terms for the award to be made "in said arbitration" payable by the Central Trust Company "in accordance with any judgment that may be entered upon such awards," which is supposed to limit the right of the plaintiffs under the agreement to awards only. The fallacy of this view consists in disregarding the provisions of the section named, which were a part of the law of the state when the agreement was entered into, and which were intended to apply to such agreements, in justice to the parties making them, so that the capricious, or ill-advised, or unreliable litigant should not be permitted to indulge in any of these follies or traits, and go forth untrammeled by responsibility.    The language employed by the codifiers giving a right of action against the sureties, if any, upon the submission, added, to leave no doubt of the intention to cover the wl ol subject, "or any instrument collateral thereto;" and these provisions, by op ration of law, are ingrafted upon the agreement as effectually as if expressed *in hæc verba.* Thus, properly construed, the agreement is an indemnity against any loss by reason of the revocation, and with which the fund is burdened.    Indeed, if strict literal construction should be demanded of the disputed clause, it may well be said that the costs and damages provided for and given to the non-revoking party are an award made by statute in "said arbitration," particularly when, as suggested, that law becomes a part of the agreement.    It is not deemed necessary to pursue this subject further.    The judgment appealed from must be affirmed, with costs.

DANIELS, J., (*concurring*.)   Serious doubts arise upon the arbitration agreement whether this action can be maintained for the appropriation of the securities deposited for the only purpose of satisfying any award which might be made to the payment of the expenses incurred prior to the revocation of the submission, which prevented an award, and terminated the authority of the arbitrators.    But the interests of these parties will be promoted by avoiding a definite solution of these doubts at the present time; for, if it should be held that the plaintiff had no right of action, a reargument of the appeal would become necessary in this court, which would produce a period of considerable delay; and after that, and the decision of the appeal, the case without doubt would be taken to the court of last resort by the defeated party. It will advance the final determination of the action to place it in a condition for taking that final step as early as practicable, and that can be done by waiving all these doubts, and affirming this judgment at once.    It will abridge the time very materially for the pendency of the action, and result in an early, as well as final, decision.    For these reasons it is considered best to concur in the conclusion of the opinion of Mr. Justice BRADY, and affirm the judgment.