UNION INS CO. et al v. CENTRAL TRUST CO. et al.

(Supreme Court, Special Term, New York County. February 11, 1895.)

ARBITRATION—REVOKING SUBMISSION—LIABILITY FOR EXPENSE.

Where a submission provides that a deposit shall be made as security for any award that may be made, expenses incurred in preparing for the arbitration are payable out of the deposit, under Code Civ. Proc. § 2384, providing that, where a party revokes a submission, any other party there-

to "may maintain an action against him, and also against his sureties, if any, on the submission or any instrument collateral thereto, for the costs and expenses incurred in preparing for the arbitration."

Action by the Union Insurance Company of Philadelphia and others against the Central Trust Company and others to recover costs and expenses incurred by defendant in preparing for an arbitration. Judgment for plaintiff.

Evarts, Choate & Beaman, for plaintiffs.

Butler, Stillman & Hubbard, for defendants.

BEEKMAN, J.   The complaint in this action was demurred to on the ground of insufficiency by the defendant corporations, and the demurrer was overruled at special term, where it was tried before Mr. Justice Van Brunt.   On appeal to the general term, the judgment entered upon the decision below was affirmed.   Union Ins. Co. v. Central Trust Co. (Sup.) 13 N. Y. Supp. 17.   The demurrants, availing themselves of permission so to do, thereupon interposed answers to the complaint, and the issues thus joined have now been brought to trial.   The evidence offered sustains all the allegations of the complaint, and the case therefore presents the same legal aspect it had when the demurrers were tried.   In view of this, no other course is open to me except to direct judgment for the plaintiffs upon the basis of a controlling decision which has declared the law of this case.   It is contended, however, that there is one question which affects the extent of the plaintiffs' recovery that was not passed upon or involved in the decision at general term.   The point so raised may be stated as follows:   By the terms of the arbitration agreement, it was provided that the compensation of the arbitrators, and their expenses, and the expenses of witnesses should be borne and paid by the parties thereto in the following proportion, to wit: One-fourth thereof by the Union Insurance Company, one-fourth thereof by the Insurance Company of the State of Pennsylvania, one-fourth thereof by the Continental Insurance Company, and one-fourth thereof by Lorenzo Dimick; "the same to be advanced from time to time, in the proportion above mentioned, upon the certificate of the arbitrators, or a majority of them; the expenses of witnesses to be adjusted and allowed by the arbitrators, or a majority of them." The agreement also contained a stipulation fixing the compensation of the arbitrators, and providing that no part of the costs and expenses of the arbitration or of witnesses should be recovered by the prevailing party or parties, or be entered in the judgment, and that any limitation by statute as to the rate of such compensation was waived.   It is now contended that this portion of the agreement is still operative, so far, at least, as to limit the recovery of the plaintiffs, if they are entitled to recover anything, to one-fourth of the following items of expense, namely:   Fees of arbitrators, counsel fees and witnesses' fees, and expenses.   I think, however, that the decision upon the demurrer necessarily involves the negative of this view.   The stipulation relied upon forms a part of the submission which has been revoked, and, as its terms clearly show, was predicated upon a continuance and completed execution of the agreement.

It was in effect inconsistent with revocation, and therefore destroyed by revocation.    The claim of the plaintiffs, as I understand it in the light of the decisions at special and general terms, is for the damages recoverable, under section 2384 of the Code of Civil Procedure, against the revoking party, and also against his sureties, if any, upon the submission, or any instrument collateral thereto.    These damages are specified in the section to be "all the costs and other expenses, and all the damages which he has incurred in preparing for the arbitration and in conducting the proceedings to the time of revocation."    The cause of action does not arise upon the agreement; on the contrary, it is outside of it, and comes into existence as the consequence of the act of revocation, by virtue of a statute which, in creating it, also measures the extent of the recovery.    The statute rests upon the principle that the revoking party, ex debito justitiae, should make good to the other damages suffered through expenditures rendered fruitless by the act of revocation.    This liability extends to the security given by the revoking party, under a collateral agreement or otherwise, to secure the performance of the award; and, although such agreement may not in terms provide for the payment of the expenses of the award or of the arbitration, "the law," to quote from the opinion at special term upon the demurrer, "has stated that, where any such obligation is entered into, the obligor, in case of a revocation of the submission, becomes liable to pay the expenses of the party who is not at fault, and the contract between the parties is to be construed in view of the provisions of the statutes governing such instruments."    The plaintiffs, therefore, seem to be entitled to the full measure of recovery prescribed by the section of the Code above referred to.    The items of damage proven on the trial come within the allowance, and amount in the aggregate to the sum of $49,178.45.    It follows from what has been said that the plaintiffs are entitled to have judgment against the defendants that the 500 shares of the capital stock of the New York & Harlem Railroad Company held by the defendant the Central Trust Company, as set forth in the agreement of submission, is subject to a charge in favor of the plaintiffs for the payment of the sum of $49,178.45, and interest within the limit of $50,000; and that the stock be sold, and the plaintiffs paid the amount of their claim, within the limit mentioned, out of the net proceeds of such sale.    Costs of this action are awarded to the plaintiffs against the answering defendants.